MEYER (BRAGG v.).    See Case No. 1,801.

MEYER (GRAHAM v.).    See Case No. 5,673.

MEYER (McNALLY v.).    See Case No. 8,909.

MEYER v. The NEWPORT.   See Case No. 10,185.

## Case No. 9,517.

### MEYER et al. v. PRITCHARD.

[12 Blatchf. 101; 1 Ban. & A. 261; 7 O. G. 1012.] [1]

Circuit Court. S. D. New York. May 25, 1874.

PATENTS—RUBBER OVERSHOES—PATENTABLE NOVELTY—INFRINGEMENT.

1. The invention covered by the claim of the letters patent granted to Christopher Meyer and John Evans, July 16th, 1872, for an "improvement in rubber overshoes," namely, "As a new article of manufacture, India rubber shoes, with strengthening or other ribs homogeneous with the substance of the body, formed by thickening up the said substance in the forming of the sheet, substantially as specified," is, to thicken up the plastic India rubber in desired places, in the sheet, as the sheet is being formed between two rolls, by means of grooves and ribs on one of the rolls, the other roll being plain, so as to leave the sheet thicker where the India rubber has entered the grooves than it is in the other parts of it, and thus make a sheet which is a flat plane on one side, and has raised ribs or projections on the other side, and to make such ribs or projections on that part of the sheet which is to be used to form the upper part of the shoe.

[Explained in Meyer v. Goodyear India-Rubber Glove Manuf'g Co., 11 Fed. 894, 895.]

2. There is no patentable novelty in such invention, beyond what is shown in the patent granted to Elias C. Hyatt and Christopher Meyer, January 17th, 1854, for an "improvement in the manufacture of boot and shoe soles of gutta percha or India rubber."

[Followed in Meyer v. Goodyear India-Rubber Glove Manuf'g Co., 11 Fed. 892, 896.]

3. A sheet made according to the patent to Meyer and Evans, is made strictly in accordance with the directions of the earlier patent, without any addition. The sheet of the earlier patent was used to cut therefrom the sole of an India rubber shoe, the sheet and the sole having a variety of thickness in different parts, and being formed in one piece, at a single operation, by the use of rollers, one of which had a surface the reverse of the form to be produced. The sheet of the later patent is used to cut therefrom the upper part of an India rubber shoe, such sheet and such upper part having a variety of thickness in different parts, and being formed in the manner above described. The two manufactures are analogous, the sole, in the one case, and the upper part, in the other, being cut and made from the sheet in the same manner; and the shoe with the upper part so thickened up is not a new article of manufacture, in view of the prior shoe with the sole so thickened up.

[Explained in Meyer v. Goodyear India-Rubber Glove Manuf'g Co., 11 Fed. 895.]

[This was a bill by Christopher Meyer and John Evans against Stephen Pritchard on certain letters patent for an improvement in rubber overshoes.]

---

[1] [Reported by Hon. Samuel Blatchford. District Judge. reprinted in 1 Ban. & A. 261, and here compiled and reprinted by permission.]

Stephen D. Law, for plaintiffs.

George Harding and James H. Ackerman, for defendant.

BLATCHFORD, District Judge. This suit is brought on reissued letters patent [No. 4,977] granted to the plaintiffs, July 16th, 1872, for an "improvement in rubber overshoes," the original letters patent [No. 111,962] having been granted to them, as inventors, February 21st, 1871. The specification says: "Our invention relates to the strengthening ribs employed upon the uppers of India rubber shoes, and consists in an improvement which will be hereinafter described, and subsequently specified in claim. Figures 1 and 3 represent plain views of two modifications of these ribs, and Fig. 2 a sectional view of forming rolls, with the plastic substance passing therethrough. Fig. 4 is a section of Fig. 1. A A, in Fig. 1, represent plain ribs, enclosing a space, in configuration similar to the openings in the uppers of ordinary rubbers. B represents a rib around the top or mouth of the shoe. b is an imitation thread passing around each rib. A' A', in Fig. 3, represent the ribs arranged in the form of a single ornamental buckle. B', in Fig. 2, represents rolls, of which the lower is plain, and the upper ribbed or pointed at d, and grooved at c, to make the strengthening ribs A A' or B, and the rows of imitation stitches b, which said ribs and grooves will be in any form or shape and location on the roller, according to the form or location of the rib or other device it is desired to produce. The imitation stitches may consist either of indentations formed in the surface of the sheet, or points projecting above the surface—the one will be formed by projections on the rollers, and the other by indentations. a a represent the ribs formed from plastic rubber as it is carried through the rolls, and it will be observed that they are not corrugations, like the strengthening ribs used upon metal, but a thickening up of the substance in certain lines or directions. a', in this figure, represents the indentations to imitate thread stitches. The process through which the material passes, to bring it into the form required, is as follows: The mass of plastic rubber is forced into the opening between the moulding or shaping rolls, and drawn out into a sheet, with the ribs and points or indentations completely shaped. It is then made up into the shoe or sandal, and vulcanized. We thus produce these ribs or figures in homogeneous connection with the other part of the sheet. They are, therefore, better than when of separate strips, pasted on in the gummy state after the sheet is formed, and secured to it in the vulcanizing process, as in the common way; and, being formed at the same time the sheet is rolled, and by the same operation, it is done without expense other than the preparing of the grooves, indentations and points in the rollers. Moreover, the said ribs or figures will be much more perfect and uniform than when done by hand. The same is true in regard to the imitation stitching, also, which has heretofore been made by a pointed wheel rolled alongside of the ribs by hand." The claim is in these words: "As a new article of manufacture, India rubber shoes, with strengthening or other ribs homogeneous with the substance of the body, formed by thickening up the said substance in the forming of the sheet, substantially as specified."

The invention set forth in this specification, as shown by the description and the claim, is to thicken up the plastic India rubber, in desired places, in the sheet, as the sheet is being formed between two rolls, by means of grooves and ribs on one of the rolls, the other roll being plain, so as to leave the sheet thicker where the India rubber has entered the grooves than it is in the other parts of it, and thus make a sheet which is a flat plane on one side, and has raised ribs or projections on the other side. The application of this idea, developed in the specification, is, to make these ribs or projections on that part of the sheet which is to be used to form the upper part of the shoe—that part which covers the top of the foot, and that part which surrounds the opening through which the foot enters the shoe. The advantage set forth is, that the ribs or projections thus made are of one substance with the rest of the material, and in homogeneous connection with it, and, therefore, better and more cheaply, uniformly, and perfectly made, than when made by pasting on strips by hand to form the ribs or projections. The patented invention is really complete when the sheet is made by the means described, ready to be made up into a shoe, and to be vulcanized. The process of making the sheet into the shoe and vulcanizing the shoe is no different from the process used to make a sheet into a shoe and vulcanize the shoe, when the ribs or projections are formed by pasting strips on the sheet by hand.

With this view of the invention, it is impossible to say that there is anything of patentable novelty or patentable invention in it, beyond what is fully shown in the patent [No. 10,429] granted to Elias C. Hyatt and Christopher Meyer, January 17th, 1854, for an "improvement in the manufacture of boot and shoe soles of gutta percha or India rubber." The specification of this patent describes the use of two rollers. One of them is a smooth roller. The other roller, called the "soleing roller," has three distinct circumferences, which produce three different thicknesses of the sole. The material, in a soft state, is passed between the rollers in a continuous sheet. The smooth roller produces a smooth surface on one side of the soleing. The other roller produces, of different thicknesses, the fore part, the shank and the heel of the sole. Thus, in one operation is performed what had previously been done in three distinct processes, and the soleing is

formed in one continuous sheet. The specification goes on to say: "Heretofore, India rubber soleing has been made one strip of equal thickness throughout, or by several strips of different thicknesses for heel, shank and forepart, cemented together at their ends, or of one strip having the length and breadth of the sole, with separate pieces cemented thereon to give proper thickness to the heel and forepart of the sole. It is at once evident that the first is an inferior sole, and requires more material than the others; and that the second and third require additional labor in the manufacture, and that the parts are liable to become separated in the process of manufacture, or afterwards, causing loss to the manufacturer or consumer. It is equally obvious that all these inconveniencies and imperfections are avoided by making the sole in one piece, as above described, by one process, and that such sole is thus produced at once, better and cheaper than heretofore. We are aware that India rubber has long since been reduced to sheets by rolling, and that the rollers used for this purpose have sometimes been engraved to produce a figured surface, analogous to that often cemented to the heels and foreparts of shoes; but these sheets have been of substantially uniform thickness, varying only in the slight indentations, &c., required to produce an ornamental or figured surface. This we do not claim. But we are not aware that India rubber has ever been rolled into sheets having a substantial variety of thickness in its different parts. Nor are we aware that shoe soles, having the proper variety of thickness, have ever been rolled out or made in one solid piece before our invention. Nor was it known that such forms could be produced as we have produced them in India rubber, until our experiments practically illustrated the fact." The claims of this patent, three in number, are in these words: "1st. Producing a shoe sole, or other analogous manufacture, in India rubber or gutta percha, in one piece, having variety of thickness in its different parts, by the use of rollers, whose surfaces present the reverse of the forms to be produced, at a single operation, substantially as herein described; 2d. Forming soleing of India rubber or gutta percha, with shanks, foreparts and heels of appropriate differences of thickness, in one solid piece, and at one operation, as described, thus producing a useful, economical and novel manufacture; 3d. We also claim such soleing or analogous manufacture in continuous sheets, at one operation, by rolling, as described."

The specification of this patent to Hyatt and Meyer fully instructs those engaged in the manufacture of India rubber shoes how to roll unvulcanized India rubber into a sheet having a substantial variety of thickness in its different parts, the sheet being made in one solid piece, the variety of thickness being produced by a thickening up of the material in any desired place, one face of the sheet being smooth and the other face having projections upon it, the projections having a homogeneous connection with the other parts of the sheet, with the advantage of cheapness and durability, as contra-distinguished from giving the increased thickness by pasting on, or cementing on, separate strips or pieces of the material, and the result being produced by the use of rollers, one of which is smooth and the other is of such configuration on its surface as to admit of more material in thickness being left at one place than at another. A person who makes a sheet according to the patent sued on, makes it strictly in accordance with the directions of the earlier patent, without any addition. A sheet out of which to cut the upper part of an India rubber shoe, such sheet and such upper part having a variety of thickness in different parts, and being formed in one piece, at a single operation, by the use of rollers, one of which has a surface the reverse of the form to be produced, is an analogous manufacture, in all respects, to a sheet out of which to cut the sole of an India rubber shoe, the sheet and the sole having a variety of thickness in different parts, and being formed in the manner above described. When the sheet is prepared from which to make the upper part of the shoe, such upper part is cut and made from it in the same manner in which the sole is cut and made from the prepared sheet from which to make the sole. The shoe having the substance or material of the upper part so thickened up is not a new article of manufacture, in view of the prior shoe having the substance or material of the sole so thickened up. It is a mere double use of the same invention. The fabric not being new, the application of it to make the upper part of a shoe is not invention, nothing novel being required to adapt it to make such upper part. The fabric which is described in the plaintiffs' patent is directly within the first and third claims of the earlier patent. The fabric of the earlier patent includes the whole of the invention set forth in the plaintiffs' patent. Smith v. Elliott [Case No. 13,041].

The bill must be dismissed, with costs.

[For another case involving this patent see Meyer v. Goodyear Rubber Co., 11 Fed. 891.]

[NOTE. From the decree entered in this case the complainant appealed to the supreme court. Pending appeal the complainants surrendered their patent, and obtained a reissue. The supreme court, Mr. Chief Justice Waite delivering the opinion, remanded the case upon the ground that the surrender extinguished the patent, and therefore no action could be maintained thereon. Meyer v. Pritchard, 23 U. S. (Lawy. Ed.) 961.]